COMMONWEALTH of Pennsylvania, Appellee

v.

Derek Earl CARVER, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 10, 2007.
Filed May 1, 2007.

Michael E. Schechterly, Newport, for appellant.

Daniel W. Stern, Asst. Dist. Atty., New Bloomfield, for Com., appellee.

BEFORE: BENDER, BOWES and COLVILLE,* JJ.

OPINION BY BOWES, J.:

¶ 1 Derek E. Carver appeals from the judgment of sentence of fifteen to thirty months imprisonment that was imposed after his ten-year probationary term was

* Retired Senior Judge assigned to the Superior Court.

revoked based on one positive urine test and pre-probationary illegal conduct. We reverse and remand.

¶ 2 On November 24, 2004, Appellant was charged with two counts of receiving stolen property and two counts of conspiracy to commit burglary based upon the following allegations. Sometime during the night or early morning hours of December 17 and 18, 2003, John Lyter and Brian Page burglarized a gas station located in Ickesburg, Pennsylvania, and stole cigarettes worth approximately $3,200. Appellant operated the getaway car and received part of the proceeds of the burglary. That same night, with Appellant again operating the getaway car, Lyter and Page burglarized a food market in Walker Township and stole twenty-eight bottles of liquor worth approximately $175 and shared the liquor with Appellant. On November 22, 2004, after being given constitutional warnings, Appellant confessed that he was driving on the night in question and that he received cigarettes and liquor from the burglaries.

¶ 3 On June 9, 2005, Appellant entered a guilty plea to all four counts, and the Commonwealth assented to imposition of a probationary term of ten years. The trial court accepted the guilty plea and on August 18, 2005, sentenced Appellant to the probationary term. In November, Appellant's probation officer had Appellant arrested and incarcerated based upon the fact that Appellant had violated the terms of his probation when a random urine test conducted on November 17, 2005, revealed the presence of drugs. On January 13, 2006, the Commonwealth moved for revocation of probation based upon the same, single allegation: one "dirty" urine. Gagnon II Petition, 1/13/06, at 1.

¶ 4 At the hearing on the Commonwealth's petition to revoke, the court was informed that Appellant had been arrested on August 17, 2005, the day prior to sentencing in this matter, for an unrelated crime. Appellant objected to the court's consideration of this evidence because it had occurred prior to the imposition of his probationary term and also argued that a sentence of total confinement for testing positively for drugs on one occasion was unwarranted. The trial court revoked Appellant's probationary term, and in imposing a sentence of imprisonment, relied solely upon the fact that Appellant had committed another crime the day before sentencing herein. This appeal followed. Appellant raises this issue:

Did the Gagnon II court commit reversible error when it sentenced appellant to a period of total confinement after a Gagnon II hearing in which the only evidence produced was that the appellant failed one random drug test and that the only criminal activity he was involved in occurred prior to the original sentencing where probation had been imposed?

Appellant's brief at 3.

¶ 5 We first must address the Commonwealth's position that Appellant's issue cannot be considered because his brief does not contain a Pa.R.A.P. 2119(f) statement. We have reviewed Appellant's brief and conclude that the statement is contained on page seven, wherein Appellant posits that we "should review this challenge of the discretionary aspect of [Appellant's] sentence" because "the imposition of a sentence of total confinement upon revocation of his probation" was erroneous under 42 Pa.C.S. § 9771. This portion of Appellant's brief satisfies the mandates of Pa.R.A.P. 2119(f) as it is contained in a separate argument section relating solely to our review of the discretionary aspects of sentence, and the argument on the merits appears in a separate section of the brief at pages ten and eleven. *See* Pa.

R.A.P. 2119(f) ("An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.").

■ ¶ 6 In addition, this section of page seven of the brief clearly sets forth why this Court should grant review of the discretionary aspects of Appellant's sentence. Appellant argues that the trial court violated the legislative enactment authorizing the imposition of a sentence of total confinement following violation of probation. "[A] claim that a particular probation revocation sentence is excessive in light of its underlying technical violations can present a question that we should review. *Commonwealth v. Sierra*, 752 A.2d 910, 912, 913 (Pa.Super.2000)." *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa.Super.2006). Hence, we conclude that the requirements of Pa.R.A.P. 2119(f) are satisfied and also grant Appellant's request that we review the sentence herein.

■ ¶ 7 We now consider Appellant's contention that under 42 Pa.C.S. § 9771, the court was not permitted to consider either his arrest prior to sentencing in this matter or his previous juvenile proceedings when it revoked probation. Subsection (c) of section 9771 of title 42 places limitations on a court's ability to sentence a defendant to total confinement upon probation revocation, stating specifically:

(c) Limitation on sentence of total confinement. The court shall not impose a sentence of total confinement upon revocation unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will com-

mit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

¶ 8 In addition, subsection (d) states unequivocally that there can be neither a "revocation" nor an "increase of conditions of sentence" until a hearing occurs wherein the court "shall consider the record of the sentencing proceeding together with evidence **of the conduct of the defendant while on probation.**" 42 Pa.C.S. § 9771(d) (emphasis added). This section clearly restrains the court from considering facts occurring prior to the imposition of probation when revoking probation.

¶ 9 It is important to remember that probation is designed to rehabilitate a defendant so that he can become a productive member of society; thus, probation promotes the interests of the public as well as the defendant. *See Commonwealth v. Del Conte*, 277 Pa.Super. 296, 419 A.2d 780 (1980). It therefore is inappropriate to consider the defendant's conduct prior to imposition of the probationary term because the efficacy of probation has not yet been tested when that behavior occurred.

¶ 10 While the court herein justified its sentence of imprisonment on the basis that it was likely that Appellant would commit another crime, this conclusion was premised upon Appellant's arrest prior to sentencing:

I believe that if [Appellant] is let loose, he's going to commit another crime. The fact that he committed a crime the evening before he was to be sentenced leads me to believe that he doesn't get it, and he doesn't understand it. If you commit a crime the day before you're coming into [c]ourt it's pretty stupid and that indicates to me that you have no respect for the Court, the criminal justice system, and that you are likely to commit another crime. So I am

revoking the order of probation, and I will impose an incarcerative sentence. . . .

N.T., Probation Revocation Hearing, 4/19/06, at 4. The court stated specifically that it was not considering whether a sentence of total confinement was necessary to vindicate the authority of the court. *Id.* at 4 ("I believe that [Appellant's] behaviors over the past several years have indicated that if he is not incarcerated, he is extremely likely to commit another crime. I don't think I even need to get to the point as to whether or not the sentence is essential to vindicate the authority of this court.").

¶ 11 Similarly, in its Pa.R.A.P. 1925(a) opinion, the court again relied upon Appellant's pre-sentencing conduct in choosing to imprison him. It stated, "There is no doubt in the Court's mind that the conduct of the Defendant indicates that it is likely that he will commit another crime if he is not imprisoned. The actions of the Defendant in committing several burglaries the day before he was to be sentenced support that belief. Furthermore, the Defendant has a criminal history, both as a juvenile and as an adult." Trial Court Opinion, 7/19/06, at 2.

¶ 12 However, as required by the express language of subsection (d) of the applicable legislative enactment, we must eliminate Appellant's pre-sentencing conduct from consideration as to whether probation should be revoked. Since the trial court was presented with evidence of pre-probationary conduct and heavily relied upon that conduct in revoking probation, we must reverse. However, it is not appropriate for us to vacate the judgment of sentence without remanding. The trial court has not considered whether the failed urine test, in and of itself, warrants revocation or whether probation can remain an effective means of rehabilitation if other measures, such as drug rehabilitation efforts, are employed.

█ ¶ 13 Technical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate an inability to reform. For example, in *Commonwealth v. Cappellini*, 456 Pa.Super. 498, 690 A.2d 1220 (1997), we affirmed revocation of probation imposed for a drug-related offense where the court decided to impose a work release county sentence upon revocation. In that case, the defendant had engaged in repeated and willful violations of the terms of his probation. He ceased drug treatment, refused to submit to drug testing, and failed to meet with his probation officer after specifically being instructed to do so. When the defendant was eventually forced to submit urine after his probation officer appeared at his residence, it tested positively for cocaine and heroin, and the defendant admitted that he had not stopped his drug use.

█ ¶ 14 Unquestionably, a violation of probation occurred. Nevertheless, even when a probation violation is present, revocation is not automatic. Rather, the focus must remain on whether probation can still be an effective tool for rehabilitation. As our Supreme Court stated in *Commonwealth v. Kates*, 452 Pa. 102, 115–16, 305 A.2d 701, 708 (1973), "The focus of a probation violation hearing, even though prompted by a subsequent arrest, is whether the conduct of the probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct." *See also Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (after a parole violation is established, there remains the issue of whether the defendant should be

committed to prison or whether other measures should be employed to achieve rehabilitation). Similarly, we indicated in *Del Conte, supra* at 782:

Whether probation or parole may be revoked for less than willful conduct is an open question. *Commonwealth v. Holm,* 233 Pa.Super. 281, 335 A.2d 713 (1975); *Commonwealth v. Rooney,* 233 Pa.Super. 225, 335 A.2d 710 (1975). In *Commonwealth v. Riley,* 253 Pa.Super. 260, 384 A.2d 1333 (1978), in reversing a revocation order predicted mostly on inadmissible hearsay, we noted that the defendant's technical violation, in the form of a brief period of unemployment, "would not be sufficient to convince a court that probation has not been an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future anti-social conduct." *Id.* at 267, 384 A.2d at 1337, quoting *Commonwealth v. Kates,* 452 Pa. 102, 115, 305 A.2d 701, 708 (1973).

We continued that it is only when "it becomes apparent that the probationary order is not serving this desired end (of rehabilitation) the court's discretion to impose a more appropriate sanction should not be fettered." *Id.* at 783 (quoting *Commonwealth v. Kates, supra* at 115, 305 A.2d at 708). *See also Commonwealth v. Cottle,* 493 Pa. 377, 426 A.2d 598 (1981) (sentence of confinement imposed upon revocation of probation near end of probationary term due to fact that defendant ceased reporting to his probation officer was unwarranted where probation had proven to be an effective rehabilitative tool for defendant); *Commonwealth v. Ballard,* 814 A.2d 1242, 1246 (Pa.Super.2003) (reversing revocation of probation based solely upon technical violations because there was no willful or flagrant disrespect for probationary terms evidenced by defendant).

¶ 15 Section 9771 is reflective of this case law in that it permits probation revocation only when the defendant has committed another crime after probation was imposed, his probationary conduct indicates that he is likely to commit another crime if permitted to remain on probation, or if the defendant's conduct on probation was such that incarceration is necessary to vindicate the authority of the court.

¶ 16 Our Supreme Court recently held that it is not proper to reverse revocation of probation and vacate the judgment of sentence where there was insufficient evidence of a probation violation presented. *Commonwealth v. Mullins,* 591 Pa. 341, 918 A.2d 82 (2007). It held that the proper procedure is to remand for another revocation hearing so that the evidentiary problem can be remedied. This case is similar in that we have eliminated some of Appellant's conduct from the trial court's consideration; however, it has not been given the opportunity to analyze whether Appellant's probationary conduct warrants revocation under the applicable legal mandates.

¶ 17 Order revoking probation reversed. Case remanded for proceedings consistent with this adjudication. Jurisdiction relinquished.